May it please the Court, Stephen Breschetto for the Plaintiff's Lois Sharer and Steve Humber. Mr. Breschetto. I'd like to first discuss, there's three claims pending in this case, an interference with FEMLA rights claim under 29 U.S.C. 2615A1, a claim for opposing unlawful employment practices under 2615A2, and a claim under the Section 504 of the Rehabilitation Act. With respect to the 2615A1 claim, and this is Ms. Sharer's claim, the crux of this claim is about Ms. Sharer's contention that she did not have to disclose her medical diagnosis in order to obtain leave, and second, that she was entitled to use the employer's sick leave policy and her accrued sick leave to substitute for FEMLA leave, and the employer's contention that Ms. Sharer needed to comply with FEMLA certification requirements. There is a three-month debate between Ms. Sharer and the employer surrounding those contentions. Our argument before this Court is that the record in the trial court is deficient in an important regard, and the record in the trial court is deficient on the issue of, during that three-month period, whether there was ever any exchange of information from the employer to the plaintiff about what the normal policies and procedures were. Isn't that the plaintiff's burden to go forward with evidence? In this situation, the plaintiff did come forward with evidence that she complied with all the normal policies and procedures of the office in which she worked for obtaining sick leave. So that evidence is in the record. Where the evidence is deficient is any evidence from the employer that there was a policy, that she didn't comply with that policy in any specific regard, or that it even informed her at the time of the employment actions of what the policy was and why her request for sick leave did not comply with that policy. It's the crux of that debate that really needs to be analyzed in terms of the violations Ms. Sharer claims, and there are three violations. Number one, that the certification form that the employer required her to sign required her to disclose her medical diagnosis. Now, let me be sure I understand. These all relate to the FMLA interference claim. Correct. Okay. What do we do with the evidence that's throughout the record that she's renouncing any rights, any claim whatsoever to the FMLA? I believe that the statements in the record that she is not seeking FML leave don't mean that she isn't exercising FMLA rights, because the statute grants her very specific rights, an entitlement to elect to use the employer's, to use her own accrued sick leave under the employer's policies. That issue was cited to the district court. Ms. Sharer plainly told the employer, and it was then the employer's obligation to analyze whether she was entitled to leave under less stringent policies of the sick leave plan in effect at the time. The employer never did that. You can even see evidence in the final termination hearing when Ms. Sharer just directly says to the employer, why can't I use sick leave? I don't understand. And the employer says, this is your opportunity to tell me, you know, what the basis of your argument is. And she says, I don't understand. Can I clarify what it is you see flowing out of a ruling of this court that adopts your theory on this claim? I'm not saying we will. I'm just trying to figure out what the next step is. You have not sued. You're suing for damages for interference with FMLA rights. Correct. She was terminated. Are you claiming, you're not claiming reinstatement. I believe we are. I believe that's in the complaint. I believe that's in there, yeah. Well, maybe you could cite it to us. You know, I don't have the cite off the top of my head. So your theory is if they violated the certification rule of FMLA, then the termination is void and she's entitled to, what, back pay? Correct. And reinstatement? Correct. All of those things. All right. I mean, this was all, when we've cited evidence up to the termination decision that the failure to sign the unlawful certification form was the crux of the reason for termination. And there was no evidence in the record she was ever presented with a lawful certification form. And the same thing is true with respect to the violation of second. Can I just be sure? Yes. With respect to your challenge to the form, it all has to do with the single line, one word, diagnosis. Correct. The single line, the one word diagnosis. In a two-page form that is quite dense. Correct. And that single word was eliminated from the form that was adopted in 1995, and a model form was in existence in 1995, eight years before this happened, which employers should have known about, which eliminated that word and simply required that appropriate medical facts be stated. I want to talk a little bit about the regulation that has been altered with the 2009 amendments to the FEMLA regulations, and that's Section 825.207. The Court asked the parties to address the applicability of that regulation. Our position is that it does not apply because it can't be applied retroactively. And there are two or three things that demonstrate why it can't be applied retroactively. Number one. Let me just clarify. The regulation was in effect in its previous form during the time that this dispute arose. Correct. Were you relying on the regulation at that time? Yes. Okay. And so that's where the whole question of diagnosis being in or out arises from. The diagnosis question arises from 825.306, which is the regulation that imposed the requirement that an employer not ask for more information than is in the form. The changes to 825.207 relate to whether the terms under which the employee can substitute leave under the employer's sick leave plan for FEMLA leave. We have identified three violations by the employer of the FEMLA regs. One is the diagnosis. Two, the failure to permit the employee to elect to take leave under the employer's requirements. And three, requiring Ms. Scherer to breach ADA confidentiality requirements to obtain FEMLA leave. With respect to the second violation, the failure to allow her to use the employer's sick leave plan, the 19- Mr. Kennedy, before you move on, I just want to clarify. The regulation, in effect, at the time says that an employee may be required to comply with any less stringent medical certification requirement. Your argument is that the certification that they were asking for was not less stringent, it was more stringent. Correct. All right. And the fact that that clause is out per the recent amendment doesn't affect her because that's your basis for arguing retroactivity? It alters the legal consequences of acts. So she would have been relying on the proviso, the less stringent proviso. By taking that out, they can't go back now and say it was okay to have required her to sign a certification. Understand the certification issue and the form is different from the ñ well, I guess to answer your question, that's right. They can't now claim that they can impose the more stringent standards of FEMLA rather than less stringent standards of their sick leave plan because that would alter. Is the diagnosis language, is that wholly dependent then on whether or not that less stringent proviso is in the regulation or is there an independent source that you're citing for why the requirement of diagnosis is unlawful under FEMLA? Yes, there are two sources. Number one, I believe that the evidence in the record at this time supports the inference that the only requirement for Cher to take sick leave was that she call in. Notify, what's her name? Right. No requirement of certification whatsoever. So in terms of ñ it was a matter of law, in terms of governing law of FEMLA, you're relying on the regulation. Correct. Correct. All right. Go ahead. Where does the Bailey case fit into this? The defendant has cited Bailey as well as another case. I think it's Writings is the name. And where they fit into this is that all of those cases talk about employees who were terminated for not submitting FEMLA certification forms. All of those cases are premised on a finding that the employee violated the employer's personnel policies and procedures. In Bailey there was evidence that the employee had signed off on a document saying that the employee would inform supervisors if they were on medication and would provide doctor's certification if they were on medication and the employee violated that policy. There isn't any evidence of that in this case. Rather, there isn't any evidence in this case that distinguishes it from Bailey. In addition, in all of those cases there is no discussion whatsoever of 825.207 and the right to elect to substitute leave under vacation, PTO, or sick leave plans. So this case is distinguishable because in this case Scherer has said, I complied with the personnel policies. I elected leave under the sick leave plan. I can't be required to do something more than that. And I believe that that distinguishes it. I would like to save two minutes for my rebuttal. And so at this point in time I'll let my opposing counsel talk. You may retain your time, counsel. We'll hear from the State. Ms. Salmon. May it please the Court? Lee Salmon on behalf of the State of Oregon. Fundamental to the resolution of Plaintiff Scherer's claims for FMLA interference is the undisputed fact that she never sought to exercise a leave entitlement under the FMLA. As a result, regardless of what alleged violations the employer may have committed, she suffered no prejudice, which is a requirement to the success of her claim under the United States Supreme Court decision in Ragsdale. I think it's important to note that in her motion for reconsideration before the district court, Scherer agreed with the Court's conclusion that she had not sought to exercise a leave entitlement under the FLA, excuse me, FMLA. And throughout the record evidence, she's insisted that instead of FMLA, she wanted an ADA accommodation. Whatever the employer may have done to determine whether she was eligible for sick leave under its policies and whether that may or may not have been a violation of its normal sick leave policies, that becomes a separate question from the FMLA and is entirely irrelevant. Well, then I think you need to reply head-on to the argument made by Mr. Breschetto that one can renounce FMLA benefits without renouncing rights under the FMLA. And that is the thrust of his argument here, that she had, by not getting the employer's sick leave, that her FMLA rights were interfered with. I would answer that. I would answer twofold in two parts, the first being the concept of a substitution of sick leave for FMLA leave is a bit of a misnomer, and I think that's something that the Department of Labor actually clarified as a part of its recent amendments. It's not really a substitution. Well, can I just, before you get too far down that road, I want to make sure we're on the same page almost literally. 29 CFR 825-207 in 1995 said, generally FMLA leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave. So you're saying that the regulation is a misnomer. The word substitute is a misnomer. You don't actually substitute your FMLA leave. Rather, you substitute the fact that it's unpaid. And your paid sick leave runs concurrent with the protected FMLA leave. My second point to that would be that the regulation, to the extent that the regulation ---- Well, excuse me, before you get to the second point, I'd like you to respond more specifically to the point that Judge Fischer is asking. He just read you that passage from .207, and I'm not quite sure you responded to that. The regulation does use the word substitute. The Department of Labor, in their recent amendments, explained that the word substitute was a misnomer, that the employee doesn't have the right necessarily to elect FMLA versus non-FMLA in the sense of a substitution. If the leave qualifies, the employer, under this circuit's case law, has a responsibility to designate it as such. And so I suggest that it's a misnomer only in the sense that it's not a true substitution. It's that the two leaves are running concurrent. Okay, so how do we apply it to the facts of this case? What she wanted to do was to not take FMLA leave. She wanted to take her paid, accrued company employer sick leave. Isn't that correct? That's correct. She's entitled to do that under FMLA. Because she expressly rejected the protections of the FMLA, that defeats her point. No, she's not expressly rejecting protections under the FMLA. She is invoking a right that she has under the FMLA to do that. Isn't that correct? So that she doesn't have to use up FMLA or take FMLA leave if she's got valid. That's part of the protection that the Act provides, doesn't it? If I could answer in a slight roundabout way, Section 825.207, subpart H, which was recently amended and which deals with the less stringent certification requirements, that was directly in conflict with the plain language of the statute that says for any FMLA leave, the employer may require a FMLA certification form, and if so, the employee shall submit that form. The employee is not entitled to reject the submission of the form. No, that's not the question. The question is, as it was postured before any amendment to the regulation, she was exercising a FMLA-guaranteed right to opt for paid sick leave. Now, forget the certification aspect as to what the employer could require. She had the right, and it's a FMLA-protected right, to opt for not going FMLA, having been advised of the opportunity by the employer, which is laudable. She says, no, I want to preserve whatever I may have down the road in FMLA leave, but I want to use my paid company sick leave, and I want to do it. Maybe she wants to do it because she doesn't want to, as the regulation permitted at the time, have to provide as much information as you might have been able to require otherwise. Now, you're saying, well, now they've amended the regulation, and so it wasn't wrong for us to require the certification. But that's a separate issue, isn't it? Well, I think they go hand in hand, and I don't think with all due respect that the question of retroactivity, the fact that they've amended the regulation now, is really the pertinent issue. Wait a minute. This is an employee who is exercising her right under what the regulation plainly says she could do, that the employer could not require a more stringent certification. That may have been bum advice or a bum regulation from the Labor Department, but the problem is she gets fired, terminated, for failing to file a form that the regulation at the time permitted under her theory. So why isn't that just almost standard retroactivity analysis? How can the rule get changed on her? And then she suffers termination because she was following what the law permitted at the time. And again, with all due respect, the regulation was in direct conflict with the statute, and the employer complied with the statute, and under those circumstances, it's the statute that controls. Okay. So I appreciate that position. So you're saying that the employer hadn't challenged the regulation, apparently, hadn't taken any steps to clarify, but the employer takes the position and imposes discipline, notwithstanding the employee believes that she is within her rights, and as a result of that, she gets labeled for insubordination and fired. And you say that that is permissible under retroactivity law and FMLA. Not necessarily under retroactivity, but under the FMLA, it is permissible. The employer's compliance with the plain language of the statute cannot constitute interference with the plaintiff's FMLA rights. And I would also reiterate that Ms. Scherer's consistent statements to the employer were not, I necessarily want sick leave. It was, I want an ADA accommodation. I'm rejecting FMLA leave. As a result, she suffered no prejudice because she would have rejected the FMLA leave. Any leave she thus got was unprotected leave, and so the employer could permissibly terminate her. Now, where does the Bailey case fit in this analysis? I think this, I think that Bailey controls this case. I don't read it as narrowly as counsel for plaintiffs does. But spell it out a little bit. Why do you say it controls? My understanding of the court's decision in Bailey is that once the plaintiff disavows her reliance on the protections of the FMLA, she can't come back later and say, but you interfered with my rights. What I really wanted was FMLA. And that's essentially what Ms. Scherer is arguing. At the time, she said, I do not want FMLA leave. Now, after she's been terminated, she's saying, wait, I did want FMLA leave. But even in her deposition testimony before the district court, when asked why she did not complete the FMLA certification forms, it was not because of the medical diagnosis, it was not because of any other violation. Her response was, I simply did not want it. I wanted an ADA accommodation instead, and I believe that I had a choice, her choice to choose an ADA accommodation, not sick leave, not FMLA leave. And under those facts ---- And she's suing under FMLA in this case? That's correct. That's my understanding that ---- She's not asserting any State remedies with respect to the denial of sick leave? No, Your Honor. Okay. This is strictly a claim for a violation of the FMLA based on opposition and interference. I would just like to talk briefly about her opposition claims, because I think the same analysis basically applies. The undisputed factual record shows that she refused to complete the certification forms, not because of any deficiencies or alleged violations, but because she simply did not want FMLA leave. And as a result, she's failed to state a claim for opposition. And as a secondary matter, there is nothing in there that would have put the employer on notice that Ms. Sherra believed that she was engaging in protective activity, protected opposition activity. Unless there are any further questions, I have nothing else I would like to add to my brief. No further questions. Thank you, counsel. Mr. Brichetto, I think you have some reserve time. Yes, thank you, Your Honor. I just want to address very briefly the opposition claims. The State in their brief has taken the position that Ms. Sherra refused, did not refuse to complete the FMLA certification forms because of any deficiency in the forms. She did not refuse to complete the FMLA certification forms because she was exercising any protected right under the FMLA. And those are all factual arguments. And the problem with those arguments is that they are an interpretation of the facts that is a characterization designed to benefit the State. And that is they're an argument to the weight. They're a jury argument. The very fact of the matter is that Ms. Sherra did raise her right to elect sick leave. Mr. Humber wrote letters specifically saying the crux of this matter is Ms. Sherra wants to use the employer's sick leave plan and informed the defendants that they were ignorant of anti-discrimination and leave laws. Those acts clearly raise ---- But you're not here on a State leave law claim. You're here under the FMLA. Correct. And we are here on ---- But your client has renounced or at least did in the first part of this proceeding. I don't believe that you can say that she renounced her claim because throughout the district court she asserted claims under FMLA. What she said ---- Let me just read. I'm not requesting leave under FMLA. Your office doesn't qualify for this coverage or OMLA because this is not a family leave issue. Today I received your letter with attached forms. I will not be filling out a request for this type of leave. You are aware I have not filled out and returned these leave forms, nor do I plan to. I mean, there's at least three ---- there's another one as well. Four times she consistently rejects any FMLA claims. But you're here under FMLA. Correct. 29 U.S.C. 2612 gives her a statutory right to elect to substitute leave. Now, I mean, what we're arguing about really is how she expresses that right. And, I mean, that's a statutory right under FMLA. It is what it is. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Goodwin, O'scannlain, Fisher